# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:17-cv-00207-FDW

KELLY WINTON PIERCE,      )
                                     )
              Petitioner,    )
                                     )
vs.                               )         **ORDER**
                                     )
ERIK HOOKS,              )
                                     )
              Respondent.   )
_____)

**THIS MATTER** is before the Court upon Petitioner Kelly Winton Pierce's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and Respondent's Motion for Summary Judgment (Doc. No. 4.)

## I.    BACKGROUND

Petitioner is a prisoner of the State of North Carolina who, on November 7, 2013, was convicted by a Wilkes County Superior Court jury of failing to notify the sheriff's office of a change of address as a registered sex offender ("failure to notify"), in violation of N.C. Gen. Stat. § 14-208.9(a).[1]  State v. Pierce, 766 S.E.2d 854, 855 (N.C. Ct. App. 2014).  He pled guilty to attaining habitual felon status.  Id.  The North Carolina Court of Appeals summarized the

---

[1] Section 14-208(a) provides, in relevant part,

> If a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered. If the person moves to another county, the person shall also report in person to the sheriff of the new county and provide written notice of the person's address not later than the tenth day after the change of address.

N.C. Gen. Stat. § 14-208.9(a) (2011).

evidence presented at trial, as follows:

In 2009, defendant was convicted of four counts of indecent liberties with a child, an offense that required him to register as a sex offender. In November 2010, defendant registered as a sex offender in Burke County. Deputy Robin Jennings at the Burke County Sheriff's Office reviewed all the sex offender registration requirements with defendant, including the requirement that, if he moved to a different county, he would be required to appear in-person and provide written notice of the address change to both the sheriff in the county where he was most currently registered and the new sheriff.

## 1. The State's Evidence

Defendant's ex-wife, Marilyn Joann Long ("Joann"), lived in Wilkes County. At trial, Melissa Anderson ("Melissa"), who lived next door to Joann, testified on behalf of the State. Melissa claimed that, beginning in June 2012, she saw defendant at Joann's house "all week," "at least five days a week," and "every evening." Although she acknowledged that defendant would usually be gone on the weekends, he was "always there" during the week. Furthermore, she alleged that defendant did things around Joann's home "like a normal person living in a house" such as mowing the yard.

Joy Griffin ("Joy"), who lived in the trailer in front of Joann's, also testified at trial. She claimed that, in June, she saw defendant in her backyard with a headlight on his head. Joy alleged that defendant would be at Joann's two or three days, leave for a day, and then come back. He would be there all day and all night. Ultimately, in November 2012 after she found out that defendant was a registered sex offender, Joy called the Wilkes County Sheriff's Office and reported that defendant was living with Joann.

## 2. Defendant's Evidence

Defendant testified on his own behalf at trial and claimed that he never moved in with Joann. Although he conceded that he may have stayed with Joann two or three days in a row to help her with home improvement projects, he usually just drove back and forth between Morganton and Wilkesboro. Joann's testimony was similar to defendant's. She claimed that defendant travelled back and forth between Morganton and Wilkesboro to help her. According to Joann, although he may have spent one or two nights with her a week, "that was about the limit."

At trial, defendant produced several documents showing an address in Burke County, including his driver's license, an electricity bill from November 2012, his bank account statements, a wireless phone bill, car registration and tax bill, and his disability check. According to defendant, these documents showed that he still resided in Burke County.

Defendant also relied on the testimony of Earl Miller ("Earl"), his neighbor in Burke County, to support his claim that he never moved to Wilkes County. According to Earl, he helped defendant complete several projects around his mobile home, including installing a water pump and water heater. Earl claimed that he and his wife saw defendant every other day during 2012 and that defendant often ate dinner with him, sometimes five times a week.

On 7 November 2012, Lieutenant Whitley from the Wilkes County Sheriff's Office took the report from Joy that defendant was living with Joann. He and Sergeant Coles went to Joann's home to investigate. Defendant denied that he was living with Joann, claiming that he stays with her "from time to time." Based on their investigation and defendant's failure to register in Wilkes County, they arrested defendant for failure to notify the Wilkes County Sheriff's Office.

Id. at 855-856.

Petitioner filed a direct appeal, challenging only the failure to notify conviction. Pierce, 766 S.E.2d at 855. He argued that: (1) the indictment was fatally defective because it named the wrong sheriff's department where notification was required and failed to allege a "failure to report in person"; (2) the trial court erred in allowing the indictment to be amended with regard to the dates of offense; and (3) the trial court erred in denying defendant's motion to dismiss because the State failed to provide substantial evidence that he resided in Wilkes County. Id.

The North Carolina Court of Appeals issued a published opinion on December 16, 2014, finding no error at trial. Id. at 861. The North Carolina Supreme Court denied a petition for discretionary review on June 10, 2015. State v. Pierce, 772 S.E.2d 734 (N.C. 2015).

On or about January 29, 2016, Petitioner filed a pro se motion for appropriate relief ("MAR") in the Superior Court of Wilkes County; he was appointed counsel to represent him in post-conviction. The trial court denied the MAR on February 1, 2017, but the North Carolina Court of Appeals granted Petitioner's pro se petition for writ of certiorari for the limited purpose of remanding for an evidentiary hearing on the issue of whether Petitioner received ineffective

assistance of counsel related to a plea offer.

A post-conviction MAR evidentiary hearing was held on July 14, 2017, in the Superior Court of Wilkes County; Petitioner was represented by counsel. On July 29, 2016, the court entered an order denying Petitioner relief on his ineffective assistance of counsel claim. Petitioner's pro se certiorari petition in the North Carolina Court of Appeals was denied on October 4, 2017.

Petitioner timely filed the instant § 2254 Petition on November 2, 2017, when he signed it under penalty of perjury and placed it in the prison mail box. See Houston v. Lack, 487 U.S. 266, 267 (1988). He raises the following grounds for relief: 1) trial counsel rendered ineffective assistance with respect to a plea offer; and 2) the trial court's jury instruction created a fatal variance in the indictment, thereby allowing the State to convict Petitioner on insufficient evidence that he had moved from Burke to Wilkes County. Respondent has filed a Motion for Summary Judgment (Doc. No. 4) and Petitioner has responded (Doc. No. 7).

## II.     STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

**B.  The Antiterrorism and Effective Death Penalty Act of 1996**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  To obtain relief under § 2254(d)(1), a petitioner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

**III.    DISCUSSION**

**A.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

In his first ground for relief, Petitioner claims trial counsel was ineffective for advising him that the State did not have sufficient evidence to prove he had moved from Burke to Wilkes County  and that he, therefore, should reject a plea offer from the State.  Petitioner raised the substance of this claim in his MAR.  After holding an evidentiary hearing on the claim, the trial court denied it on the merits.

According to Petitioner, prior to his indictment, the State made a plea offer whereby he would plead guilty to failure to notify, a Class F felony, in exchange for a mitigated sentence of 24 months in prison.  (§2254 Pet. 5, Doc. No. 1.)  His attorney informed him of the offer but advised him to reject it because the State did not have any evidence Petitioner had actually

moved to Wilkes County; it only had evidence that Petitioner made frequent trips to Wilkes County. (§2254 Pet. 5, 16.) Relying on his attorney's advice and the fact that he had not moved to Wilkes County, Petitioner rejected the plea. Subsequently, a grand jury indicted him for failure to notify and for obtaining habitual felon status. Petitioner's attorney told him the prosecutor was using the habitual felon indictment to try to scare him into accepting the plea. (§2254 Pet. 16.)

Petitioner claims he was prejudiced by counsel's advice that he could not be convicted of failure to notify based upon witness testimony alone. He also claims he suffered prejudice because counsel advised him to reject the State's plea offer before warning him that he could be indicted and convicted of being an habitual felon if he went to trial. (§2254 Pet. 17.)

In <u>Strickland v. Washington</u>, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.  It is not enough to show "that

the errors had some conceivable effect on the outcome of the proceeding," <u>id.</u> at 693, or that "it

is possible a reasonable doubt might have been established if counsel acted differently," <u>Richter</u>,

562 U.S at 111.  Instead, "<u>Strickland</u> asks whether it is 'reasonably likely' the result would have

been different," and the "likelihood of a different result must be substantial, not just

conceivable." <u>Id.</u> at 111–12.

The Supreme Court has held that claims of ineffective assistance of counsel in the plea

bargain context are governed by the two-part test set forth in <u>Strickland</u>.  <u>See</u> <u>Hill v. Lockhart</u>,

474 U.S. 52, 57 (1985).  "As a general rule, defense counsel has the duty to communicate formal

offers from the prosecution to accept a plea on terms and conditions that may be favorable to the

accused." <u>Missouri v. Frye</u>, 132 S.Ct. 1399, 1408 (2012).  Additionally, it generally "is the

responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a

plea agreement." <u>Libretti v. United States</u>, 516 U.S. 29, 50 (1995).  To establish prejudice in the

context of pleas "a defendant must show the outcome of the plea process would have been

different with competent advice." <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1384 (2012).  When a plea

offer is rejected, a defendant must show that "but for the ineffective advice of counsel there is a

reasonable probability that":  (1) "the defendant would have accepted the plea and the

prosecution would not have withdrawn it in light of intervening circumstances"; (2) "the court

would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's

terms would have been less severe than under the judgment and sentence that in fact were

imposed." <u>Id.</u> at 1385.

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of

counsel[,] . . . [t]he AEDPA standard and the <u>Strickland</u> standard are dual and overlapping, and

[the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are " 'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'" Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139).

At the evidentiary hearing on this claim, the court received testimony from Petitioner, Petitioner's trial attorney, Justin Dingee, two of Petitioner's friends, George Thomas and Earl Dean Miller, and Jennifer Ledford, Dingee's paralegal and office assistant. (July 24, 2107 Order Deny. MAR 1, Resp't's Ex. 13, Doc. No. 5-14.) In its order denying Petitioner's ineffective assistance of counsel claim, the trial court made the following relevant findings of fact:

- The State tendered a plea offer to Pierce that if [he] pled to the offense of Failing to Report Change of Address as a Registered Sex Offender, . . . the State would agree to [a sentence] at the bottom of the mitigated range for a Felony Level VI, on a Class F felony, which is a mandatory active sentence of a minimum of 20 months and a maximum of 33 months imprisonment. (Id. at p. 2, ¶ 4.)

- Mr. Dingee communicated this offer to Pierce. (Id.)

- Mr. Dingee further advised Pierce that an active sentence is mandatory for a Class F felony at a felony record level VI . . . [and] explained the potential active time . . . Pierce could spend in [prison] if Pierce lost at trial and was sentenced as an Habitual Felon. (Id. at 5-6, ¶ 22.)

- Mr. Dingee further advised Pierce about the evidentiary strengths and weaknesses of the case, the benefits of a plea bargain, and the risks of exposing Pierce to additional prison time if the case went to trial before a jury. (Id. at 6, ¶ 23.)

- Pierce was adamant with Mr. Dingee that Pierce did not want to accept any plea offer that involved an active sentence[.] (Id. ¶ 24.)

- Pierce rejected the plea offer on the record and in open court on September 16, 2013, during a regular session of Wilkes County Criminal Superior Court, [during which the presiding judge] also addressed the possibility of

8

Pierce being sentenced to a longer term of imprisonment as an Habitual Felon[.]  (Id. at 2, ¶ 5.)

- George A. Thomas, a friend of Pierce and a defendant's witness at his jury trial, met with Justin Dingee, Pierce, Earl [Dean] Miller, and Katherine Taylor [deceased] before Pierce's trial in 2013.  According to Thomas, Pierce disagreed with Mr. Dingee about whether to accept a plea offer during the meeting.  Pierce did not like the plea bargain that Mr. Dingee was trying to work out, and Pierce was not going to take the plea that Mr. Dingee advised.  According to Thomas, Pierce's opinion was that he was not guilty of the offense that he was charged with. (Id. at 5, ¶ 19.)

- According to [Earl Dean] Miller, something was said about a plea bargain during the meeting, but Pierce did not want a plea bargain because he claimed that he was not guilty of what he was charged with. (Id. at ¶ 20.)

- Mr. Dingee expressed his concerns to his paralegal and office manager, Jennifer Ledford, about taking Pierce's case to trial and the exposure of additional active time with an Habitual Felon status. (Id. at 6, ¶ 26.)

- Ms. Ledford had heard Pierce tell Mr. Dingee that Pierce had done nothing wrong and that Pierce did not want to take any plea during an office meeting. (Id. at ¶ 27.)

The trial court concluded Petitioner had failed to demonstrate that Dingee's performance fell below an objective standard of reasonableness or that he suffered prejudice as a consequence of Dingee's performance in connection with the plea offer.  (July 24, 2107 Order Deny. MAR 7-10.)  The trial court specifically cited Strickland in rejecting Petitioner's claim.  (Id. at 9.)

Based upon the court's factual findings that Dingee communicated the plea, and explained the strengths and weaknesses of the State's case, the benefits of accepting the plea, the sentencing risks of going to trial, the sentencing consequences of obtaining habitual felon status, and that conviction on the failure to notify count carried a mandatory prison sentence for someone with Petitioner's criminal record, combined with its findings that Petitioner repeatedly expressed a belief in his own innocence and an unwillingness to accept the plea offer, Petitioner cannot show that the trial court's rejection of his ineffective assistance of counsel claim "was so

lacking in justification [under <u>Strickland</u>] that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103; 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner may obtain relief only if he can demonstrate that the trial court's rejection of his ineffective assistance of counsel claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court's factual determinations are presumed correct, and Petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In his habeas Petition, Petitioner challenges only the trial court's finding that he rejected the plea offer on the record and in open court on September 16, 2013, arguing that no transcript supporting that finding of fact was introduced during the evidentiary hearing. (§ 2254 Pet. 18.)

On the contrary, the order denying Petitioner's ineffective assistance of counsel claim specifically states that the trial court considered "the record proper" in making its findings of fact. (July 24, 2017 Order Deny. MAR 1.) The "record proper" is the record of Petitioner's state court proceedings, including the record on appeal, which contains the transcript of the September 16, 2013 pre-trial hearing (R. on Appeal 4, Resp't's Ex. 3, Doc. No. 5-4). Furthermore, the judge conducting the MAR evidentiary hearing referred to the September 16, 2013 transcript during the evidentiary hearing. (MAR Hr'g Tr. 4-5, Resp't's Ex. 17, Doc. No. 5-18.)

On September 16, 2013, Petitioner, represented by Dingee, appeared before the Wilkes County Superior Court, so that Dingee could make Petitioner's rejection of the plea offer part of the record. (Pre-trial Hr'g Tr. 4-5, Resp't's Ex. 16, Doc. No. 5-17.) The State presented the following as the plea offer:

The defendant is a record level VI.  In lieu of the habitual felon status, the State would dismiss that, allow him to plead to the failure to report a new address as a sex offender, which is a Class F felony.  The State would recommend that he receive a mitigated sentence.  He's a record level VI.  The date of offense is 11/07/2012.  So it would be under the new chart, and I think the State recommended a low end of the mitigated, which –

. . .

would be 20.  A minimum sentence of 20 months active.

(Pre-trial Hr'g. Tr. 4.)  When asked if Petitioner wished to reject that offer, Dingee responded that he had gone over the offer multiple times with Petitioner and that it was Petitioner's wish to reject the plea and move forward.  (Pre-trial Hr'g. Tr. 4-5.)  The court then confirmed with Petitioner directly that his attorney had communicated the plea to him, that he had had an opportunity to discuss the plea with his attorney, that he understood that if he lost at trial he would be facing an habitual felon trial phase, and that losing that phase would bump his failure to notify conviction up to a Class C Felony for sentencing purposes and subject him to a minimum sentencing range of 87-117 months in prison.  (Pre-trial Hr'g. Tr. 5-7.)  Petitioner expressed no confusion about the terms of the plea or the consequences of rejecting it, and stated that he had made the decision to reject the plea freely and voluntarily.  (Pre-trial Hr'g. Tr. 7.)

Notably, this hearing occurred after Petitioner was indicted on both the failure to notify and the habitual felon counts.  It is evident from the prosecutor's and the court's statements that the plea offer remained open at least until September 16, 2013, when Petitioner rejected it on the record.  Accordingly, Petitioner's assertion that he was prejudiced because counsel advised him to reject the State's original plea offer before warning him that he could be indicted and convicted of being an habitual felon (§ 2254 Pet. 17) is belied by the record.

In his Response to the summary judgment motion, Petitioner does not challenge any specific findings by the trial court.  Instead, he contends the findings of fact and conclusions of

law in the order are not owed any deference under AEDPA because the order was drafted by the State's attorney. (Pet'r's Resp. to Summ. J. Mot. 2-6, Doc. No. 7.)

At the conclusion of the evidentiary hearing, the court issued an oral ruling from the bench denying Petitioner's ineffective assistance of counsel claim. The judge then directed the State's attorney to draft the written order denying the MAR for the judge to sign at a later date. (MAR Hr'g Tr. 53.) Although such a practice is disfavored in this circuit, the disposition of a petitioner's constitutional claims in such a manner is, nonetheless, unquestionably an "adjudication" by the state court. Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000). If the order issued by the state court addresses the merits of the petitioner's claim, then the deferential standard demanded by § 2254(d) must be applied. See id. (citing Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999) (standard of review set forth in § 2254(d) applies to all claims "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree" (citation omitted)); Correll v. Thompson, 63 F.3d 1279, 1293 n.11 (4th Cir. 1995) (rejecting petitioner's argument that habeas court's factual findings were not entitled to presumption of correctness where court adopted state's version verbatim)). Furthermore, the trial court directed the State's attorney to provide Petitioner's post-conviction counsel a copy of the draft order and directed the two attorneys to work out any objections, or arrange a conference call with him to work through any objections, Petitioner's attorney might have to the draft order. (MAR Hr'g Tr. 53-54.) Thus, Petitioner's post-conviction counsel had an opportunity to object to and influence the factual findings before the order was signed.

The Court has read the transcript of the MAR evidentiary hearing. Although there was conflicting testimony about whether Dingee advised Petitioner to reject the plea, the conflict, as Petitioner's own post-conviction attorney noted, was between Petitioner's testimony and

12

everyone else's, including his own witnesses'. (MAR Hr'g Tr. 47.) George Thomas recalled Dingee wanting Petitioner to accept a plea and Petitioner refusing, and Earl Miller's testimony was that Petitioner did not want a plea bargain because he was not guilty. Justin Dingee testified that he strongly advised Petitioner on more than one occasion to consider taking the State's plea and that he never advised him to reject the plea, but Petitioner was unwilling to discuss any plea offer that required active time. Jennifer Ledford testified she heard Petitioner telling Dingee that he was not going to take any plea. The trial court found Dingee's and Ledford's testimony credible.

"Federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (citations omitted). Petitioner has not identified any evidence in the record that rebuts the presumption of correctness bestowed by § 2254(e)(1) on the trial court's factual findings. Cf. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) ("Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."). He, therefore, has not demonstrated that the trial court's rejection of his ineffective assistance of counsel claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(2). Accordingly, this claim is denied.

### B. FATAL VARIANCE/SUFFICIENCY OF THE EVIDENCE

Petitioner states as his second ground for relief, "[c]onviction obtained upon insufficient evidence in violation of due process." (§ 2254 Pet. 7.) For supporting facts, Petitioner begins by contending that the State "introduced no evidence that could be considered proof that [he] had

13

'moved' from [his] residence in Burke County and changed [his] residence to Wilkes County"

and that "[a]ll of the State's evidence only proved . . . that [he] frequently traveled to Wilkes

County[.]" (§ 2254 Pet. 7.)  The Petition continues by explaining why Petitioner was in Wilkes

County as often as he was without moving there.  The Petition then asserts that the trial court

expanded the elements of the failure to notify charge beyond those alleged in the indictment,

thereby relieving the State of its burden to prove Petitioner had "moved" to Wilkes County.  (§

2254 Pet. 19.)

Petitioner raised the substance of this claim in his MAR.  (MAR 7-12, Resp't's Ex. 8,

Doc. No. 5-9.)  The trial court held that it was procedurally defaulted and denied the claim on the

merits.  (Feb. 1, 2017 Order Deny. MAR, Resp't's Ex. 9, Doc. No. 5-10).  Respondent raises

procedural default as a defense to this claim.  (Br. Support. Summ. J. Mot. 9-10, Doc. No. 5.)

The Court agrees the claim is procedurally defaulted, although for different reasons than those

argued by Respondent.

A federal habeas court will not review a claim that is procedurally defaulted absent a

showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice

will occur if the habeas court does not review the claim.  See Wright v. Angelone, 151 F.3d 151,

160 (4th Cir. 1998).  One way in which procedural default occurs is when "a habeas petitioner

fails to exhaust available state remedies and the court to which the petitioner would be required

to present his claims in order to meet the exhaustion requirement would now find the claims

procedurally barred."  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (internal quotation

marks omitted).

The second way in which a procedural default occurs is if the state court disposed of a

claim on "adequate and independent state [procedural] grounds[.]"  Bostick v. Stevenson, 589

F.3d 160, 164 (4th Cir. 2009).  A ground is "adequate" if it is based on a rule or law that is firmly established and regularly and consistently applied.  Id.  A ground is independent if it does not require the state court to rely on a federal constitutional ruling.  See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

Respondent contends that this claim is procedurally defaulted because Petitioner failed to exhaust it in the state courts and would be barred by state procedural rules from returning to state court and attempting to exhaust it now.  (Br. Support. Summ. J. Mot. 9-10.)  Specifically, Respondent asserts that Petitioner raised a sufficiency of the evidence claim on direct appeal to the North Carolina Court of Appeals but then failed to raise the claim in his petition for discretionary review to the North Carolina Supreme Court.  (Br. Support. Summ. J. Mot. 10 (citing O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (holding that claims not raised in petition for discretionary review to state's highest court from intermediate state appellate court on direct review are non-exhausted and therefore procedurally barred from federal habeas review)).)  Additionally, Respondent contends that when confronted with the same claim in Petitioner's MAR, the trial court concluded it was procedurally barred because it already had been raised and adjudicated on direct appeal.  (Br. Support. Summ. J. Mot. 9.)

Respondent is correct that Petitioner raised a sufficiency of the evidence claim on direct appeal, which he did not then pursue in his petition for discretionary review.  The claim raised in Petitioner's MAR is substantively different than the claim Petitioner raised on direct appeal.  To be sure, there are overlapping arguments in those claims, and Petitioner's MAR claim is inartfully drafted.  Nevertheless, liberally construed, Petitioner's MAR claim appears to be that the trial court's instruction on an essential element of the offense created a fatal variance in the indictment which relieved the State of its burden to prove beyond a reasonable doubt that

15

Petitioner had "moved" or "changed residence." (§ 2254 Pet. 19.) In other words, the trial court's instruction enabled the State to convict him on insufficient evidence that he had moved. The Court notes that Petitioner's Response to the Summary Judgment Motion focuses heavily on the jury instruction/indictment issue. (Pet'r's Resp. to Summ. J. Mot. 7-9.) Moreover, Petitioner argues in his Response that this claim is not procedurally defaulted because, unlike his claim on direct appeal, the claim raised in his MAR "concerns the unconstitutional instruction by which the trial judge broadened the element 'moved', relieving the State of its burden of proof on the element, and allowing the jury to convict Petitioner on insufficient evidence." (Pet'r's Resp. to Summ. J. Mot. 11.) Thus, Respondent's arguments do not support a finding that Petitioner failed to exhaust this claim in the state courts.[2]

Nevertheless, Petitioner's claim is procedurally defaulted. North Carolina law provides that an MAR must be denied where "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the [motion for appropriate relief] but did not do so." N.C. Gen. Stat. § 15A-1419(a)(3). In the order denying Petitioner's MAR, the trial court held that this claim was procedurally barred because Petitioner was in a position to raise it on direct appeal but failed to do so.[3] (Feb. 1, 2017 Order Deny. MAR 2, ¶ 2 (conclusions of law).)

"A fatal variance occurs "[w]hen . . . the [trial] court, through its instructions to the jury, .

---

[2] Petitioner raised his MAR claim in his subsequent petition for writ of certiorari in the North Carolina Court of Appeals. (Mar. 15, 2017 Cert. Pet. 5-7, Resp't's Ex. 10, Doc. No. 5-11.)

[3] In its order denying relief, the trial court cites N.C. Gen. Stat. § 15A-1419(a)(1), which provides for denying a motion for appropriate relief if "[u]pon a previous motion [for appropriate relief] . . . the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so" (Feb. 1, 2017 Order Deny. MAR 2, ¶ 2 (conclusions of law)), instead of N.C. Gen. Stat. § 15A-1419(a)(3). This Court concludes, however, that the trial court simply made an unintentional citation error. The trial court specifically states the claim is procedurally barred "because the defendant was in a position in his appeal to the North Carolina Court of Appeals to raise [the] claim[] and did not do so." (Feb. 1, 2017 Order Deny. MAR 2, ¶ 2 (conclusions of law).) Additionally, the court found as a matter of fact that it was reviewing Petitioner's first MAR. (Id. at 2, ¶ 3 (findings of fact).)

. . broadens the bases for conviction beyond those charged in the indictment," constructively amending the indictment. United States v. Randall, 171 F.3d 195 (4th Cir. 1999) (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)). The indictment, the transcript of the jury instructions, and the transcript of all witness testimony were part of the record on appeal. (R. on Appeal 2, 4.) Therefore, Petitioner was in a position to raise his fatal variance claim on direct appeal. He did not do so.

Section 15A-1419(a)(3) is an independent and adequate state procedural bar, precluding federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 714-15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001) (holding procedural bar pursuant to N.C. Gen. Stat. § 15A-1419 is mandatory). Because the trial court relied upon an adequate and independent state procedural bar to deny this claim, the Court may not review the claim on the merits absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court does not review the claim. See Wright, 151 F.3d at 160.

"[A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default[.]" Martinez v. Ryan, 132 S. Ct. 1309, 1317 (2012). "[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," however, and must "first be raised in state court." Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488–89 (1986)). In other words, "'a claim of ineffective assistance,' . . . must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Carpenter, 529 U.S. at 452 (quoting Carrier, 477 U.S. at 489). Petitioner did not raise an ineffective assistance of appellate counsel claim in his MAR.

Without a showing of cause and prejudice to excuse the procedural default, Petitioner

17

may obtain review of his fatal variance claim "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Schlup v. Delo, 513 U.S. 298, 315-l6 (1995) (quoting McCleskey v. Zant, 499 U.S. 467, 493-94 (1991)).  To demonstrate that a fundamental miscarriage of justice will occur if the habeas court fails to review his procedurally defaulted claim(s), a habeas petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536–537 (2006) (quoting Schlup, 513 U.S. at 327.)  If a petitioner meets the burden of producing new, truly reliable evidence of innocence that was not presented at trial, the court then considers "all the evidence old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. at 538 (internal quotation marks and citation omitted).  If, after reviewing all the evidence, the court determines "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," Schlup, 513 U.S. at 327-28, the court may review the merits of the procedurally defaulted constitutional claims, see id. at 317.

Petitioner was prosecuted and convicted based upon his failure to provide 10 days of written notice of his change of address to the Wilkes County Sheriff's Office as required by N.C. Gen. Stat. § 14–208.9(a).  Pierce, 766 S.E.2d at 857-858.  On direct appeal, Petitioner argued that the evidence presented at trial was insufficient to prove he had "changed his address" as required by § 14–208.9(a).  (Appellant's Br. 23-31, Resp't's Ex. 4, Doc. No. 5-5.)  In rejecting that argument, the North Carolina Court of Appeals explained:

> With regard to what constitutes a sex offender's "home address," our Supreme
> Court has rejected the notion that it is only "a place where a registrant resides and

where that registrant receives mail or other communication." State v. Abshire, 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009). Instead, the Court held that

> a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary. Notably, a person's residence is distinguishable from a person's domicile. Domicile is a legal term of art that denotes one's permanent, established home, whereas a person's residence may be only a temporary, although actual, place of abode.

Id. at 331, 677 S.E.2d at 451 (internal citations and quotation marks omitted). The Court went on to say that

> mere physical presence at a location is not the same as establishing a residence. Determining that a place is a person's residence suggests that certain activities of life occur at the particular location. Beyond mere physical presence, activities possibly indicative of a person's place of residence are numerous and diverse, and there are a multitude of facts a jury might look to when answering whether a sex offender has changed his or her address.

Id. at 332, 677 S.E.2d at 451. Thus, the issue is whether the State presented substantial evidence that defendant changed his residence or actual place of abode, even temporarily.

Pierce, 766 S.E.2d at 859.

After reviewing the evidence presented by the State, the appellate court concluded:

> the evidence tended to show that defendant had more than just a "physical presence" at Joann's but, instead, had established a residence there. Thus, the State presented substantial evidence that, although defendant may still have had his permanent, established home in Burke County, he had, at a minimum, a "temporary home address," see [Abshire,] at 331, 677 S.E.2d at 451, in Wilkes County. Accordingly, this evidence tended to show that defendant changed his "home address," as that term is described in Abshire, and was sufficient to defeat defendant's motion to dismiss.

Pierce, 766 S.E.2d at 859–60. In other words, the appellate court concluded the State presented

substantial evidence that Petitioner had "changed his address" to Wilkes County, even if such

change was temporary. See id. at 861.

In his Petition and Response to the summary judgment motion, Petitioner argues a

19

different legal basis (fatal variance) for why the evidence presented at trial was insufficient to prove he changed his address from Burke to Wilkes County. He does not identify any "new reliable evidence" not presented at trial that shows he did not temporarily reside in Wilkes County during the time in question. Therefore, his does not fall "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice,'" see Schlup, 513 U.S. at 315-3l6, and the Court may not consider Petitioner's fatal variance claim on its merits, see Wright, 151 F.3d at 160.

### V.  CONCLUSION

Petitioner has not demonstrated that he is entitled to relief on his ineffective assistance of counsel claim under either § 2254(d)(1) or § 2254(d)(2). Consequently, that claim shall be denied. Petitioner's claim that one of the trial court's instructions created a fatal variance in the indictment, allowing the State to convict him on insufficient evidence, is procedurally defaulted and shall be dismissed. Accordingly, Respondent is entitled to Summary Judgment in this action.

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DISMISSED and DENIED**;

2. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: June 26, 2018

Frank D. Whitney
Chief United States District Judge